# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIRNELL WILLIAMS, # B-58000, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18-cv-1015-NJR |
| ) | |
| KAREN JAIMET, ) | |
| WARDEN THOMPSON, ) | |
| MARCUS MYERS, ) | |
| CHARLES HECK, ) | |
| LIEUTENANT WRANGLER, ) | |
| L. HICKS, ) | |
| and OFFICER RODMAN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He claims that some of the defendants improperly confiscated and read his legal mail, and others violated his due process rights in two disciplinary proceedings.

The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A. The Court also must consider whether all of Plaintiff's claims may appropriately proceed together in the same lawsuit. This initial review reveals that not all of Plaintiff's claims are properly joined in this action. The improperly joined claims shall be severed into a separate case, where they shall undergo the required Section 1915A evaluation.

Under Section 1915A, the Court is required to screen prisoner complaints to filter out

1

non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that the claim that shall remain in this action is subject to dismissal under Section 1915A, but Plaintiff will be given an opportunity to submit an

amended complaint in order to correct the deficiencies in his pleading.

**<u>The Complaint</u>**

Plaintiff filed the original Complaint in this action on April 24, 2018 (Doc. 1), along with a Motion for Preliminary Injunction (Doc. 2). On April 30, 2018, Plaintiff filed another Complaint (Doc. 5), which was docketed as an Amended Complaint. An amended complaint supersedes and replaces all prior complaints, rendering them void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). Thus, the original Complaint (Doc. 1) is a nullity, and Doc. 5 is now the operative Complaint. For clarity, Doc. 5 shall be referred to as the First Amended Complaint; its allegations are summarized below.

Plaintiff is "a disabled wheelchair assisted resident," who is currently confined in segregation at Pinckneyville. (Doc. 5, p. 3). Plaintiff requests the Court to delineate the counts representing the "several constitutional violations" he raises in this lawsuit. *Id.*

On March 23, 2018, Plaintiff received two flash drives given to him as discovery during a deposition for another *pro se* civil action, *Williams v. DuPage Metropolitan Enforcement Grp., et al.*, Case No. 16-cv-384 (N.D. Ill., filed Jan. 11, 2016).[1] (Doc. 5, pp. 4, 14). Immediately after the deposition, an officer searched Plaintiff and noticed the flash drives in his legal envelope. (Doc. 5, p. 7). On March 26, 2018, Plaintiff tried to give the flash drives to corrections officer Mitchel (not a defendant) to give to another officer (McBride) after he found out that he should not have them in his possession. *Id.* That same day, he gave the flash drives to a secretary (Diane Skorch, who also is not a defendant), to find out how he could review the discovery. (Doc. 5, pp. 4, 7). Shortly thereafter, Thompson and Rodman took Plaintiff to segregation. (Doc. 5, p. 4).

Thompson ordered Rodman to "confiscate all Plaintiff's legal mail to read it, search it

---

[1] The First Amended Complaint mistakenly references this case as "18-cv-0384" on page 4, but includes the correct case information on page 5. (Doc. 5, pp. 4-5).

and make copies," to copy and review the flash drives, and specified that nothing should be given to Plaintiff. (Doc. 5, p. 4). As a result, all of Plaintiff's legal mail was confiscated and reviewed without Plaintiff being present. On April 5, 2018, most of the legal mail was returned to Plaintiff, but some items, including the flash drives, were not given back. (Doc. 5, p. 5). Plaintiff indicates that he cannot submit interrogatories in the Northern District of Illinois case (No. 16-cv-384) because he needs paperwork that was not returned. *Id.*

On March 28, 2018, Plaintiff received a disciplinary report charging him with possession of pills found hidden in his cell. (Doc. 5, pp. 5, 15). When the ticket was heard, hearing panel members Heck and Myers refused to call Plaintiff's witnesses. (Doc. 5, pp. 5, 10, 20). The final summary report erroneously states that Plaintiff did not request a witness. (Doc. 5, pp. 5, 18). He was punished with two months in segregation, as well as restrictions on some privileges. (Doc. 5, pp. 18-19). In an attached affidavit, Plaintiff claims that Heck was improperly allowed to read Plaintiff's medical file, in violation of HIPAA (the Health Insurance Portability Accountability Act) to compare the pills that were found. (Doc. 5, p. 12). He further states that the adjustment committees are prejudiced and routinely find Black inmates guilty of disciplinary charges without calling their witnesses, while white inmates are treated differently from Blacks for the same offense. (Doc. 5, p. 12).

On April 10, 2018, Plaintiff received another disciplinary ticket (issued on April 4, 2018, by Rodman), for possession of the flash drives. (Doc. 5, pp. 5, 16). Hicks signed the document stating that he served Plaintiff with the ticket on April 6, noting that Plaintiff refused to sign the ticket. *Id.* Plaintiff asserts, however, that he was not actually served with the ticket until April 10, 2018, and that Wrangler, not Hicks, served it. (Doc. 5, pp. 5, 11). According to Plaintiff, IDOC rules provide that a ticket shall be served within three days of the offense, or the ticket shall be

expunged. (Doc. 5, p. 11).

The ticket was heard by Heck and Diane Skorch on April 11, 2018, the day after Plaintiff received it, and he was not able to prepare a defense. *Id.* Plaintiff claims that Heck knew that the ticket was not served within the three days required by IDOC rules, and that it therefore should have been expunged. (Doc. 5, p. 5). He also complains that it was improper for Skorch to serve on the adjustment committee, because she had been involved in the incident where Plaintiff's possession of the flash drives was discovered. (Doc. 5, p. 11). Plaintiff's requests for grievance forms were denied, so he informed Jaimet of his complaints in a letter, which raised the issues of the late service of the ticket, false information on which officer served it, and Skorch (who was a witness) serving on the committee. (Doc. 5, pp. 5, 21).

Another hearing was held (apparently on the same ticket) on April 25 or 26, 2018, but Plaintiff again did not have time to prepare a defense. (Doc. 5, pp. 6, 11). Plaintiff told Heck and Myers that it would be a conflict of interest for them to hear the ticket, and he gave them a copy of his lawsuit and "the injunction that was filed." (Doc. 5, pp. 5-6, 11). The Complaint does not disclose what punishment Plaintiff received for this disciplinary infraction, but indicates that he was given additional segregation time. (Doc. 5, p. 6). Plaintiff's Motion for Injunction (Doc. 2) states that he was given a total of six months in segregation, with four months resulting from the flash drive ticket. (Doc. 2, p. 4). In the attached letter to Jaimet, Plaintiff states that he would not get out of segregation until December 26, 2018. (Doc. 5, p. 21).

Finally, Plaintiff alleges that Warden Jaimet failed to investigate and review or sign the disciplinary committee's recommendations. (Doc. 5, p. 6).

Plaintiff seeks an order from this Court requiring the defendants to release him from segregation and expunge his disciplinary record. He also requests compensatory damages.

5

(Doc. 5, p. 6).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the First Amended Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Claim against Thompson and Rodman, for interfering with Plaintiff's access to the courts, by confiscating and reading Plaintiff's legal mail outside Plaintiff's presence, and withholding the confiscated legal material from Plaintiff for at least ten days;
>
> **Count 2:** Due process claim against Heck and Myers, for finding Plaintiff guilty of the March 28, 2018, disciplinary report (for possession of pills) without calling Plaintiff's requested witnesses;
>
> **Count 3:** Due process claim against Wrangler, Heck, and Hicks, for failing to give Plaintiff sufficient notice of the April 4, 2018, disciplinary report (for possession of flash drives) to allow him to prepare his defense, and against Heck for improperly allowing Skorch to sit on the disciplinary committee;
>
> **Count 4:** Due process claim against Jaimet, for failing to investigate or review the disciplinary actions in Counts 2 and 3.

## Severance of Claims and Defendants

As part of the screening process, the Court must assess whether the claims against the various parties may properly proceed together in the same action, in consideration of Federal Rule of Civil Procedure 20. Under Rule 20(a)(2),[2] a "plaintiff may join multiple defendants in a

---

[2] Rule 20, which governs joinder of parties in a single action, must be satisfied before the Court turns to the question of whether claims are properly joined under Rule 18. *Intercon Research Assocs., Ltd. v. Dresser Industries, Inc.*, 696 F.2d 53, 57 (7th Cir. 1982); Wright, Miller, & Kane, 7 Federal Practice & Procedure Civil 3d § 1655 (West 2017). *See also UWM Student Ass'n v. Lovell*, 888 F.3d 854 at *7 (7th

single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence *and* presents questions of law or fact common to all." Wright, Miller, & Kane, 7 Federal Practice & Procedure Civ. 3d § 1655 (West 2017) (emphasis added); FED. R. CIV. P. 20(a)(2). The Seventh Circuit instructs that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(b), (g)). Severance of unrelated claims is encouraged, and the Seventh Circuit has recently warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). *See also Wheeler v. Talbot*, 695 F. App'x 151, 152 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them). Consistent with *George*, *Owens*, and *Wheeler*, improperly joined parties and/or claims shall be severed into new cases, given new case numbers, and assessed separate filing fees.

      Here, Plaintiff's claim in Count 1 against Thompson and Rodman for confiscating and reading his legal mail is legally and factually distinct from the due process claims in Counts 2, 3, and 4, which involve different defendants. While Rodman issued the disciplinary ticket that is the subject of Count 3, the Complaint does not allege that Rodman had any involvement in the adjudication of that ticket or the alleged failure to follow due process protections. Thus, Rodman is not associated with Count 3, and there is no connection between Count 1 and Counts 2-4 that

---

Cir. 2018) (Rules 18 and 20 "operate independently," and the Rule 20 inquiry comes first). Rule 18 allows a plaintiff to join in one action as many claims as it has against an opposing party.

7

would support joinder of these claims in the same action pursuant to Rule 20. It may be argued that the confiscation of legal documents that gave rise to Count 1 was part of the same transaction or occurrence that led to the disciplinary charge in Count 3 for possession of the flash drives. But the claims in Count 1 and Count 3 involve completely different questions of law and fact, which makes joinder of the claims improper under Rule 20.

For these reasons, Count 1 shall remain in this action, and Counts 2, 3, and 4 shall be severed into a new case. Because Counts 2 and 3 both involve Defendant Heck, under Rule 18, they may proceed in the same action even though they arose from different incidents or transactions. Count 4 against Jaimet relates to both Counts 2 and 3. After the new case is opened, given a case number, and assigned to a Judge, the Court shall conduct the required merits review pursuant to 28 U.S.C. § 1915A on the claims in the severed case. Plaintiff shall be assessed a new filing fee for the severed case. The pending motion for injunctive relief (Doc. 2), which relates to Plaintiff's due process claims and confinement in segregation, shall be filed and addressed in the severed case containing Counts 2-4. The merits of Count 1 shall be addressed below.

**Dismissal of Count 1 – Access to the Courts/Confiscation of Legal Mail**

Under the First Amendment, prisoners have the right to send and receive mail. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Nonetheless,

> that right does not preclude prison officials from examining mail to ensure that it does not contain contraband, *Wolff v. McDonnell*, 418 U.S. 539, 576, 94 S. Ct. 2963, 41 L.Ed.2d 935 (1974); *Rowe*, 196 F.3d at 782. An inmate's legal mail, however, is entitled to greater protections because of the potential for interference with his right of access to the courts. *Rowe*, 196 F.3d at 782. Thus, when a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence. *See Wolff*, 418 U.S. at 577, 94 S. Ct. 2963; *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304, 305-06 (7th Cir. 1993).

8

*Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005). *See also Guajardo-Palma v. Martinson*, 622 F.3d 801, 804 (7th Cir. 2010).

In this case, the "legal mail" that was confiscated by Thompson and Rodman from Plaintiff's cell apparently consisted of material that had previously been screened as incoming mail and then delivered to Plaintiff. It also included the flash drives given to Plaintiff by the opposing attorney in the case pending in the Northern District of Illinois, which Plaintiff had not yet had the opportunity to review. Other than mentioning notes and discovery-related documents (Doc. 5, p. 5), Plaintiff does not offer any description of the confiscated mail, thus the Court can only speculate as to whether the "legal mail" included confidential attorney-client communications, correspondence from court clerks or other officials, or some other material relating to Plaintiff's litigation activity. Attorney-client correspondence, as described in *Kaufman*, is entitled to greater protection than other mail, so long as it is clearly marked as "legal mail" or "privileged mail." Not every letter from a law office necessarily represents privileged attorney-client communications. *See Guajardo-Palma*, 622 F.3d at 805-06; *Kaufman*, 419 F.3d at 686.

While the flash drives were given to Plaintiff by an attorney, that lawyer represented the opposing party or parties in a lawsuit where Plaintiff is proceeding *pro se*. As such, the material would not be protected by any attorney-client privilege, because the lawyer was not representing Plaintiff.

Mail between an inmate and a court generally does not qualify as privileged legal mail, and inspection of such material outside the presence of the inmate would not amount to a constitutional violation.

> [W]ith minute and irrelevant exceptions all correspondence from a court to a litigant is a public document, which prison personnel could if they want inspect in

the court's files. It is therefore not apparent to us why it should be regarded as privileged and how [the plaintiff] could be hurt if the defendant read these documents before or after [the plaintiff] does.

*Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). *See Stone-El v. Fairman*, 785 F. Supp. 711, 715-16 (N.D. Ill. 1991) (applying the rationale of *Martin* to incoming mail from court clerks).

Without more information, the Court cannot determine whether Thompson and Rodman's confiscation of what Plaintiff characterizes as "legal mail" violated Plaintiff's right to confidentiality in attorney-client communications. This is one component of a claim for denial of access to the courts.

The other requirement to maintain a claim for denial of access to the courts based on the improper opening of, or interference with attorney-client correspondence, is that a plaintiff must demonstrate some hindrance to his ability to prosecute a meritorious legal claim. No constitutional claim is stated unless the element of prejudice is met. *See Guajardo-Palma*, 622 F.3d at 805-06 ("whether the unjustified opening of [attorney mail] is a violation of the right of access to the courts or merely, as intimated in *Kaufman* and held in *Gardner*, a potential violation . . . . we think [as with claims challenging the adequacy of a prison's library or legal assistance program] there must likewise b[e] a showing of hindrance") (citing *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997)); *Kaufman*, 419 F.3d at 686 (prisoner "offered no evidence that his ability to litigate any matter" was affected by the opening of mail from attorneys).

Plaintiff's First Amended Complaint does not reveal whether any privileged attorney-client correspondence (in other words, true legal mail) was read by Thompson or Rodman. Nor does it demonstrate that Plaintiff experienced any detriment to pending or contemplated litigation

if such mail was opened and inspected. It thus fails to state an actionable claim for the confiscation of "legal mail" or the inspection of the confiscated material outside Plaintiff's presence.

The element of prejudice to the prisoner's ability to litigate a meritorious case applies to any claim for denial of access to the courts. This would encompass the portion of Plaintiff's claim that is based on Thompson and Rodman's failure to return some legal materials to Plaintiff, which could include the missing discovery material, or documents other than attorney-client correspondence. Plaintiff asserts that he is unable to submit interrogatories (or possibly responses to discovery; the pleading is not clear on this point) in the pending Northern District of Illinois case, because he needs legal paperwork that Thompson and Rodman never returned to him. These facts could support a claim for denial of access to the courts, but Plaintiff must show more than a mere delay in his case. Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 506 U.S. 1062 (1993). To state a claim, a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010). Here, Plaintiff has not indicated whether he is under some deadline to prepare interrogatories or responses or whether he has requested the court where his case is pending to extend his time for action based on his inability to access the confiscated material.[3]

---

[3] A review in www.pacer.gov of the docket sheet in *Williams v. DuPage Metropolitan Enforcement Grp., et al.*, Case No. 16-cv-384 (N.D. Ill.), reveals that the case had been stayed until December 10, 2017. After the stay was vacated (Doc. 80 in Case No. 16-cv-384), discovery proceeded, and the defendants

The Court will not engage in speculation regarding whether Thompson's and/or Rodman's actions created actual prejudice to Plaintiff's ability to litigate his *pro se* claims in *Williams v. DuPage Metropolitan Enforcement Grp., et al.*, Case No. 16-cv-384 (N.D. Ill.), or in any other legal matter. Accordingly, Count 1 and the First Amended Complaint (Doc. 5) in this action shall be dismissed without prejudice pursuant to Section 1915A for failure to state a claim upon which relief may be granted. Plaintiff shall be allowed to submit another amended complaint providing additional facts to support his claim in Count 1, if he still wishes to pursue this claim.

## **Pending Motions**

Plaintiff's motion for preliminary injunction (Doc. 2) shall be terminated in this action. It will be filed in the newly severed case containing Counts 2, 3, and 4 and addressed in that case.

Plaintiff also has filed a motion for recruitment of counsel. (Doc. 10). The dismissal of the First Amended Complaint without prejudice raises the question of whether Plaintiff is capable of drafting a viable amended complaint without the assistance of counsel.

There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647,

---

indicated their intention to file a motion for summary judgment. Plaintiff has a pending motion for the appointment of counsel, filed on May 7, 2018, and a status hearing in the matter is set for June 13, 2018.

654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

Plaintiff's motion states that he has contacted numerous attorneys in an effort to secure representation. He names five attorneys who declined to represent him, but he does not attach any correspondence from those lawyers to document his attempts. These efforts may be considered reasonable in light of the first *Pruitt* requirement.

As to the second inquiry, Plaintiff does not disclose his educational background. He does claim that his current ability to represent himself is limited because he has recently had "multiple seizures, which [have] caused memory loss." (Doc. 10, p. 3). Further, he does not have free access to the law library because he is in segregation. (Doc. 10, pp. 2-3). Despite these issues, Plaintiff's pleadings and motions reflect that he is articulate and capable of stating the relevant facts and his legal claims. At this juncture, the Court is merely concerned with whether Plaintiff can plead relevant facts regarding the legal materials confiscated by Thompson and Rodman, in order to support a claim for denial of access to the courts. All that is required in preparing the amended complaint is for Plaintiff to include more factual content regarding the documents that were seized, as well as the items that were not returned to him, and to explain how the absence of that material affected Plaintiff's ability to litigate his pending case in the Northern District of

Illinois (or any other legal matter having to do with those documents). Plaintiff alone has knowledge of these facts, and no legal training or knowledge (or access to law library time) is required to set them down on paper. Thus, the recruitment of counsel is not warranted at this time, and the motion (Doc. 10) is **DENIED** without prejudice.

The Court will remain open to appointing counsel as the case progresses. Should Plaintiff seek the recruitment of counsel in the future, he is **ADVISED** to attach to his motion copies of correspondence from at least three attorneys whom he has contacted in an effort to secure legal representation.

## Disposition

**COUNT 1** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. As Count 1 is the only claim remaining in this action, the First Amended Complaint (Doc. 5) is also **DISMISSED** without prejudice from *this* action, for failure to state a claim upon which relief may be granted with reference to Count 1.

The Clerk is directed to **TERMINATE** Plaintiff's motion for preliminary injunction (Doc. 2) in this action (it shall be filed in the severed case).

**IT IS HEREBY ORDERED** that Plaintiff's due process claims (**COUNTS 2, 3, and 4**), which are unrelated to the access-to-courts claim in Count 1, are **SEVERED** into a new case. That new case shall be: Claims against **CHARLES HECK, MARCUS MYERS, LIEUTENANT WRANGLER, L. HICKS,** and **KAREN JAIMET.**

In the new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order;
(2) The First Amended Complaint (Doc. 5);
(3) Plaintiff's motion for preliminary injunction (Doc. 2);
(4) Plaintiff's motion to proceed *in forma pauperis* (Doc. 3) and trust fund account statement (Doc. 8); and
(5) Plaintiff's motion to appoint counsel (Doc. 10).

Plaintiff **will be responsible for an additional $350.00 filing fee** in the new case. No service shall be ordered on the defendants in the severed case until the Section 1915A review is completed.

**IT IS FURTHER ORDERED** that the *only claim remaining in this action is COUNT 1 against WARDEN THOMPSON and OFFICER RODMAN*. This case shall now be captioned as: **TIRNELL WILLIAMS, Plaintiff, vs. WARDEN THOMPSON, and OFFICER RODMAN, Defendants.**

**IT IS FURTHER ORDERED** that Defendants **JAIMET, MYERS, HECK, WRANGLER, and HICKS** are **TERMINATED** from *this* action with prejudice.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case (which now consists only of Count 1), Plaintiff shall file his Second Amended Complaint on or before **July 5, 2018**. It is strongly recommended that Plaintiff use the form designed for use in this district for civil rights actions. He should label the pleading "Second Amended Complaint" and include Case Number 18-cv-1015-NJR. The amended complaint shall include the claim designated as **COUNT 1** above, and shall **NOT** include the claims (Counts 2, 3, or 4) that shall be severed into a separate case.

In the Second Amended Complaint, Plaintiff shall specify, *by name*,[4] each defendant alleged to be liable under the particular count, as well as the actions alleged to have been taken by that defendant. Plaintiff should state facts to describe what each named defendant did (or failed to do), that violated his constitutional rights. New individual defendants may be added if they were personally involved in the constitutional violations. Plaintiff should attempt to include

---

[4] Plaintiff may designate an unknown defendant as John or Jane Doe, but he should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification.

the facts of his case in chronological order, inserting names of defendants where necessary to identify the actors and the dates of any material acts or omissions.

An amended complaint supersedes and replaces all prior complaints, rendering them void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the previous Complaint. Thus, the Second Amended Complaint must contain all the relevant allegations in support of Plaintiff's claims and must stand on its own, without reference to any other pleading. Plaintiff must also re-file any exhibits he wishes the Court to consider along with the Second Amended Complaint.

If Plaintiff fails to file an amended complaint within the allotted time or consistent with the instructions set forth in this Order, the action shall be subject to dismissal with prejudice. FED. R. CIV. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915A. Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

No service shall be ordered on any defendant until after the Court completes its Section 1915A review of the Second Amended Complaint. If the Second Amended Complaint fails to survive review under Section 1915A, Plaintiff may also incur a "strike."

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff files a Second Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs

under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  June 5, 2018**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**